IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

**September 19, 2025**

LAURA A. AUSTIN, CLERK
BY: **/s/ S. Wray**
DEPUTY CLERK

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 7:25-cr-00032 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| ALCIDES CASTRO-MARTINEZ, | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are two motions filed the United States. In the first, the government asks that the court stay the order of U.S. Magistrate Judge C. Kailani Memmer ordering the defendant's release on bond and with conditions pending trial. (Dkt. No. 48.) In the second, the United States asks the court to revoke Judge Memmer's order of release. Defendant has filed responses in opposition to both. For the reasons discussed herein, both motions will be denied.

## I. BACKGROUND

Defendant Alcides Castro-Martinez was named in a multi-count indictment returned on August 14, 2025. (Dkt. No. 3.) After his arrest, he appeared before United States Magistrate Judge C. Kailani Memmer for an initial appearance and detention hearing. (Dkt. Nos. 5, 12.) Judge Memmer twice granted requests to briefly continue the detention hearing and issued an order of temporary detention. (Dkt. Nos. 20–21, 32.) On September 8, 2025, Judge Memmer held the detention hearing, denied the government's motion for detention, and ordered Castro-Martinez released on an unsecured bond with conditions. (Dkt. Nos. 40–41.)[1]

Later that same day, the United States filed its first motion to stay, which it called an "emergency motion." (Dkt. No. 42.) The next day, it submitted an amended motion. (Dkt. No.

---

[1] Additional detail about the procedural background of the case is set forth in Judge Memmer's memorandum opinion and order entered September 10, 2025. (Dkt. No. 47, at 1-2.)

44.)  In that motion, it asked Judge Memmer to stay her order granting the defendant pre-trial release to give it time to appeal her order of release by filing a motion to revoke the order.  In arguing for the stay, the government noted that defendant had an immigration detainer against him issued by the department of Immigration and Customs Enforcement (ICE), and it also argued that Castro-Martinez is a flight risk.

After giving the defendant an opportunity to respond, Judge Memmer entered a memorandum opinion and order addressing the motion on September 10, 2025.  (Dkt. No. 47.)  In it, Judge Memmer considered the four-factor test governing stays generally, as set forth in *Nken v. Holder*, 556 U.S. 418, 434 (2009).  She then addressed each of those four factors as they applied to this case and concluded that they did not support the issuance of a stay.  (*See generally* Dkt. No. 47.)  She thus denied the government's amended motion to stay.  These motions followed.

## II.  DISCUSSION

### A.  Motion to Stay (Dkt. No. 48)

The day after Judge Memmer ruled on the amended motion to stay, the United States filed another motion titled as a "Motion to Stay the Order Granting the Defendant's Pre-trial Release."  (Dkt. No. 48.)  In its latest motion, the United States notes its "understanding" that Castro-Martinez was released on bond and immediately placed in ICE custody, where he remains.  (Dkt. No. 48, at 1.)  It also advises that "his first appearance before an immigration judge will be on October 6, 2025," and that he "may be removed as early as October 10, 2025." (*Id.*)  It acknowledges that his detainer is not a basis not for his release to be revoked, but it contends that the detainer and the fact that he is in ICE custody support *staying* the release order pending the appeal and revocation request under 18 U.S.C. § 3145.  (*Id.* at 1 n.2.)  In its motion,

the government again focuses on the four-factor rest from *Nken*, essentially arguing that Judge Memmer erred in her analysis of those factors.  (*Id.* at 2–4.)

Interestingly, the government's motion does not address most of the cases cited by Judge Memmer in her opinion, even on topics that it directly discusses.  For example, the government "recognizes that the irreparable harm stems from the actions of another player in the executive agency—i.e., the likely removal of Mr. Castro-Martinez by ICE."  (*Id.* at 3.)  Yet it fails to grapple with the authority Judge Memmer cited on this point, including two recent district court cases holding that the possibility of removal by another executive agency is an insufficient basis to fine irreparable harm to the United States in a criminal prosecution.  (*See* Mem. Op. & Order at 4–5 (citing and discussing *United States v. Abrego*, No. 3:25-cr-00115, 2025 WL 1762967, at *6 (M.D. Tenn. June 25, 2025) and *United States v. Vasquez-Robles*, No. 2:25-mj-55, 2025 WL 1090884, at *7 (E.D. Va. Apr. 7, 2025)).)  Judge Memmer elaborated: "To ensure the government does not suffer the harm for which it complains, it is incumbent upon *itself*—not the court on this motion—to make sure deportation does not occur before the defendant faces the underlying charges against him."  (*Id.* at 5.)

In his opposition to the motion to stay, defendant first emphasizes that the motion to stay was referred to Judge Memmer under 28 U.S.C. § 636(b)(1)(A), and thus that government's motion to stay is properly construed as objections to her order.  (Opp'n 1, Dkt. No. 50.)  As such, it should be reviewed under the standard set forth in that subsection of the statute: specifically, the court may reconsider the matter only if Judge Memmer's order "is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).  (*See also* Opp'n 2 (quoting same).)  He then goes on to discuss the reasons why a stay is inappropriate and why Judge Memmer's ruling is not clearly erroneous.

The motion to stay raises some interesting legal issues, starting with the proper characterization of the government's challenge as either a stand-alone motion related to its appeal from the release order or objections to the magistrate judge's order.

But because the court herein denies the government's motion to revoke the release order, the proceedings before this court are over.[2] Thus, there is no need to stay the release order. In short, because the court's order denying revocation has now been issued, the motion to stay "pending detention proceedings" and to allow the United States to appeal to this court is moot and will be denied.[3]

**B.  Motion to Revoke Order of Release**

Also pending before the court is the government's motion to revoke, which it filed under 18 U.S.C. § 3145(a)(1). (Dkt. No. 49.) The defendant filed a response on September 17, 2025, and the motion is ripe for disposition. This court's reviews Judge Memmer's decision to release defendant de novo, making its own independent judgment concerning whether release is appropriate. *See United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989). The court may rely on the record from the detention hearing before the magistrate judge and is not required to hold a second evidentiary hearing. *United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985) (noting that occurrence in case before it); *United States v. Vargas-Garcia*, No. 3:25-cr-5, 2025 WL 1117459, at *1 (W.D. Va. Apr. 15, 2025); *United States v. Martin*, 447 F. Supp. 3d 399, 402–03 (D. Md. 2020) ("[T]here is ample authority for the conclusion that the Court may decide the motion [under § 3145(b)] on the filings (including proffers offered by counsel) as opposed to a hearing."). Having listened to the audio recording of the bond hearing before Judge Memmer, the court finds it unnecessary to hold its own hearing.

---

[2]  At this point, the United States has not indicated that it intends to appeal from this court's order denying revocation to the United States Court of Appeals under § 3145(c).

[3]  The motion also may be moot on the ground that the court cannot "stay" a release order that already has been accomplished.

Under the Bail Reform Act, the individuals charged with a crime are generally released before trial, but the Act establishes a two-step process for detaining an individual instead. First, the government may move for detention if the defendant has been charged with certain enumerated offenses. Castro-Martinez is charged with at least one "felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm or destructive device." 18 U.S.C. § 3142(f)(1)(E).[4] Thus, the government has met its burden at the first step, and a detention hearing was required and was held.

At the second step of the inquiry, the court may order pretrial detention only if the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).[5] In making this determination, the court considers (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his physical and mental condition and whether, at the time of the alleged offense, he was on pretrial release pending trial; and (4) the nature and seriousness of the danger that the defendant's release would present to any person. *Id.* § 3142(g). Here, the United States argues that Castro-Martinez should be detained because no condition or combination of conditions will reasonably assure his appearance and that no conditions will reasonably assure the safety of the community. It bears the burden of proving detention is proper by a preponderance of the evidence, as to his failing to appear, *United States*

---

[4] The government also may seek detention if it shows that the case involves a "serious risk" that the defendant will flee, 18 U.S.C. § 3142(f)(2)(A), and the government invokes that provision, as well. Given that subsection (f)(1) is satisfied, the court does not address the issue of whether there is a serious risk of flight. Either way, its analysis at the second step is the same.

[5] In certain cases, there is a rebuttable presumption that this finding is satisfied, but the parties agree that the presumption in favor of detention does not apply here. (Dkt. No. 51, at 5 (defendant noting fact); Audio Recording of Detention Hr'g (US acknowledging fact).)

*v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001), and by clear and convincing evidence, as to the safety of persons and the community, 18 U.S.C. § 3142(f)(2)(B).

Before turning to a discussion of those factors, the court first notes—as implicitly acknowledged by the United States—that the risk of defendant's involuntary removal from the country as a result of immigration proceedings is generally deemed insufficient, at least alone, to prove that "no combination of conditions will reasonably assure the defendant's presence at future court proceedings." *See United States v. Alejo*, 2018 WL 3715764, at *3–4 (W.D. Va. Aug. 3, 2018) (noting that the Fourth Circuit has yet to consider the question, but that the likelihood that the defendant will be deported by ICE officials prior to trial does not constitute a "risk of flight as a basis for detention," in part because the risk that a person will flee suggests volitional conduct). *See also United States v. Ailon-Ailon*, 875 F.3d 1334, 1337–39 (10th Cir. 2017) ("[I]n the context of § 3142(f)(2), the risk, that a defendant will 'flee' does not include the risk that ICE will involuntarily remove the defendant."); *United States v. Hernandez Cerrato*, No. 1:23-cr-00419-MJM-1, 2024 WL 1329296, at *5 (D. Md. Mar. 28, 2024) (same (quoting *Ailon-Ailon*, 875 F.3d at 1337)). *Accord United States v. Mejias-Mejias*, 771 F. Supp. 3d 688, 692 (D. Md. 2025) (agreeing with the *Alejo*, *Ailon-Ailon*, and other decisions that the Bail Reform Act considers "flight as an act of volition" such that "non-appearance caused by the action of another entity—including a different government agency—does not suggest that the accused chose to flee and not appear in court").[6]

As for the factors in Section § 3142(g), the first two—the nature and circumstances of the charged offenses and the weight of the evidence against him—are not in his favor, as Castro-Martinez concedes.  (Opp'n 5.)  He is alleged to have sold 10 firearms in 7 controlled

---

[6] As Judge Memmer alluded to in denying the stay, (Mem. Op. 4–5), if the prosecutors in this case do not want defendant removed in immigration proceedings, that is an issue that they may resolve with their counterparts at the appropriate agency.  *E.g.*, *Ailon-Ailon*, 875 F.3d at 1339 ("declin[ing] to resolve the alleged conflict within the Executive Branch").  His custody by ICE is not a reason for this court to deviate from the standards set by the Bail Reform Act.

transactions over about a five-month period.  He was undocumented and prohibited from possessing firearms, and he knew—for most of the purchases—that the buyer was a convicted felon.  In addition, one firearm had an obliterated serial number, one had a high-capacity magazine, and another was a sawed-off shotgun.  These are serious offenses.  And while Castro-Martinez retains his presumption of innocence, 18 U.S.C. § 3142(j), the court notes that the evidence against him is strong for purposes of considering detention.  As explained by the case agent who testified at the detention hearing and as proffered by the United States, the evidence includes controlled purchases with video and audio evidence.

The remaining considerations, however, weigh in Castro-Martinez's favor.  First, as to his history and characteristics, he has only a minimal criminal history consisting of convictions for driving while intoxicated and driving without a license, both in 2017.  He was not under any criminal justice sentence at the time of the alleged offenses.  Although the offenses involve firearms, the court does not find that sufficient to render detention necessary.

Relevant especially to his potential non-appearance, the court notes that Castro-Martinez has substantial and strong ties to the Western District of Virginia and to the United States, all of which serve as strong incentives to appear as ordered.  There is little in the record to suggest that he will flee.

He has been married for eleven years to his wife, who is a U.S. citizen.  They live with six children (some are his stepchildren), four of whom are under 18, and all are U.S. citizens.  He plays a crucial role in his family.  First, he is the sole provider financially for the family, although his wife also receives Social Security disability payments for her and for one of her sons.  He also assists in caring for the children, especially when his wife is too ill to do so.

Moreover, he has additional ties to Virginia: he has siblings who reside in Roanoke and other parts of Virginia.  Castro-Martinez has lived in Roanoke and in the United States for over a

decade, with no evidence before the court of regular or recent travel to Honduras. These facts show significant ties to the area and significant reasons not to flee. Further, as Judge Memmer noted at the detention hearing, and as the United States does not dispute, there is no evidence that he failed to appear for any court proceedings associated with his prior charges.

The United States counters by suggesting that he could just leave and go live in Honduras and his wife and children, as American citizens, could come visit him. It also argues that it would be logical for family members to want him to live in Honduras in freedom, as opposed to in the United States in prison. The court is not convinced that either of these possibilities means that there are no conditions that would reasonably assure his appearance. Indeed, based on the information provided to the court, it does not appear that the family would have the financial resources to travel back and forth to the United States and Honduras. And his wife, who suffers from kidney failure and heart problems, receives regular medical treatment and care here in the United States. These facts do not support the government's theory.

The court acknowledges that there are some concerning facts related to defendant. As the United States emphasized, Castro-Martinez faces significant prison time if convicted and, as his wife candidly admitted when testifying, he "drinks a lot" of alcohol. Additionally, when arrested, a pipe containing methamphetamine residue was found in his vehicle, although there is no evidence that the pipe was his or that he had used it. He sold at least some of the firearms out of his house, which is also concerning. But any risks posed to others and any risk of flight are significantly diminished with the conditions imposed, which include home detention (with exceptions for work, educational opportunities for him and his children, and medical appointments for him and his family, and other similar exceptions), GPS monitoring, requiring him to surrender any passport, and other restrictions such as a complete restriction on the use of alcohol.

Lastly, Judge Memmer (and this court, upon listening to the audio recording of the wife's testimony), found defendant's wife to be an appropriate third-party custodian and found her credible when she testified that she would indeed report Castro-Martinez if she were to become aware of his violations of the terms of his release. As she explained, she could not afford to go to jail and leave her children without a parent. Her credible assurances, particularly when coupled with the conditions of GPS monitoring and home detention (among others), are sufficient to "reasonably assure" defendant's future appearances.

### III. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby ORDERED that:

1. the government's motion to revoke the order of release (Dkt. No. 49) is DENIED, and defendant (if released from ICE custody) will remain on bond subject to the conditions the court imposed at the detention hearing; and

2. the government's motion to stay (Dkt. No. 48) is DENIED as moot in light of the court's ruling on the motion to revoke.

The clerk is DIRECTED to provide notice of this order to all counsel of record.

Entered: September 19, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge